[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. It is found that all of the allegations of plaintiff's complaint have been proven and that the marriage of the parties has broken down irretrievably. Their marriage is ordered dissolved for that reason.
II. The Marital Estate of the Parties
Plaintiff
1/2 interest in family home at No. 80 Broadview Street, Bristol, CT
 F.M.V. $280,000 Less mortgage -258.089 -------- Equity $ 21,911
1/2 interest $ 10,956
1/2 interest in No. 417 Highland Avenue Waterbury, CT.
F.M.V. $ 90,000 CT Page 13510 Less mortgage 67,947 -------- Equity 22,053
1/2 interest $ 11,027
 1995 Jeep Wrangler F.M.V. $9,000 (son's car) Less loan 7,500 ------- Equity $1,500
Not included in marital estate.
Household furniture. etc. Webster Bank Accounts (2 accounts) 1,200
Promissory Note from defendant
 1997 Ford Contour $10,500 (daughters car) Less loan 9,000 ------- Equity 1,500
Not included in marital estate
 1991 Plymouth Van 2,500 Dental Practice 37,500 ------- $63,183 Defendant
1/2 interest in family home at 80 Broadview Street, Bristol, CT $10,955
1/2 interest in No. 417 Highland Avenue, Waterbury, CT 11,026
Whole interest in Pomeraug Office (pre-marital property)
1969 Chevrolet Corvette 9,000
Household furniture. etc.
Savings accounts CT Page 13511
 CORP/A Newton S/B. 3,000 Community S/B
 Life insurance F.V. $2000 C.S.U 41 Stock in dental practice $30,000 (pre-marital) ------- $ 34,022
Total Marital Estate $ 97,205
III. An Examination of the Evidence as it relates to Sec. 46b-81(c) C.G.S.
 A. General Background Information
The plaintiff wife, who is forty-three years of age, and the defendant husband, who is thirty-eight, were married on July 7, 1990, eight years ago. This is plaintiff s second marriage, her first having terminated by divorce in 1983. Two children were issue of that marriage, a son Robert, age fourteen, and a daughter Catherine, age sixteen. Defendant had not previously married, and there are no children issue of this marriage. When they were married defendant was a practicing dentist with his office in Waterbury while plaintiff worked as a dental hygienist in his office.
The parties had first met in early June, 1987. At that time defendant had just graduated from dental school and plaintiff was working part time while taking pre-dental courses. At the time plaintiff owned and lived in her own home in Granby. Connecticut with her two children. In December, 1987, at defendant s suggestion. plaintiff sold her house in Granby from which she netted $86,460 along with an additional $10,500 from the sale of several horses and associated equipment. After a stay of several months at her parent s house, plaintiff in June, 1988 purchased a home on Miller Road, Bristol, Connecticut using the remainder of her Granby funds for this acquisition. She had previously. on June 22. 1988, loaned defendant $49,000 from those funds. so that he could purchase his present dental practice in Waterbury. (More concerning this loan anon). For a while after their marriage the parties and plaintiff's children resided in her home on Miller CT Page 13512 Road, Bristol. During this period plaintiff withdrew an additional $9,500 from her savings account and gave it to defendant. By 1991 defendant felt the family needed larger quarters. The Miller Road property was then sold and the present family home at 80 Broadview Street, Bristol was purchased jointly by the parties on February 21, 1991. Plaintiff separated from defendant on March 5, 1995, and commenced this dissolution within less than two weeks later.
B. Employment History of the Parties
Following her marriage, plaintiff continued to work full time as a dental hygienist and assistant at her husband s dental office until August, 1992, when she became a full time student at the University of Connecticut School of Dentistry in Farmington. She graduated in March, 1997, purchased a dental practice in Hartford for $35,000 and presently is a sole practitioner at that location. Plaintiff s most current financial affidavit indicates a gross weekly income from her employment of $414 with a weekly net after the usual deduction of $316.
Defendant has been a solo dental practitioner since his marriage. His most recent financial affidavit shows a gross weekly income from his practice, related efforts and rent of $2392 with a weekly net of $1,414 after allowable deductions.
C. The Promissory Note
More than two years prior to their marriage and before they were engaged defendant told plaintiff that he would like to purchase the dental practice of a Dr. Rogers in Waterbury for $50,000 but that he had only $1,000 for that purchase. Plaintiff offered to loan defendant the balance of $49,000 wanting, as she testified, "to help him". Defendant suggested that a promissary note be prepared and, acting on his own suggestion, had either his father or brother, both practicing accountants, prepare such an instrument. Without any suggestion from plaintiff as to its terms, defendant produced a note to plaintiff for $49,000 providing for unsolicited interest at 13 per cent per annum. Both parties signed the note which was retained by the defendant. The original note has not at present been located, but a copy thereof was produced at trial.
Defendant declared he repaid $1,000 in March, 1988, but plaintiff denied the authenticity of her endorsement on the check CT Page 13513 for payment. The court concludes that defendant signed plaintiff s name on the check and thereafter deposited the same in plaintiff s account in her personal bank in Winsted. Defendant thus should receive credit for the repayment of said sum of $1,000.
As for the balance of the note, defendant claims there was an agreement between the parties that he should receive a credit for such purchases on behalf of plaintiff during the marriage as jewelry, vacations, food, clothing, mortgage payments, vehicle payments, and repairs on plaintiff's prior home. He contended further that these various amounts far exceeded any indebtedness he might have on the note. Plaintiff vehemently denied the existence of any such agreement. In her proposed orders her attorney requested repayment of principal and accrued interest amounting to $115,885.
After the final argument by counsel for both parties this court remarked that a possible defense of usurious interest as well as another of the statute of limitations had not been raised or even mentioned by either party and requested briefs by counsel on these issues. This having been done, the court concludes as follows:
Attention must first be given to three state statutes which pertain to the problem:
Sec. 37-4 C.G.S. states that "no person and no firm or corporation or agent thereof, other than a pawnbroker as provided in Sec. 21-44, shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge. demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum."
Sec. 37-5 C.G.S. states that "No person, x x x x x shall, with intent to evade the provisions of Sec. 37-4, accept a note or notes for a greater amount than that actually loaned."
Sec. 37-8 C.G.S. states that "No action shall be brought to recover principal or interest, or any part thereof, on any loan prohibited by Sec. 37-4 x x x x x." While these two statutes would appear at their face to bar recovery by the plaintiff of any part of said loan, our courts, when resolving litigation in this issue, have been much more understanding and forgiving. CT Page 13514
This court determines that this issue is governed by the findings of our appellate court in the matter of GreglonIndustries Inc. v. Bowman. 21 Conn. App. 131 (1990). In that case where recovery was sought on a note with a face amount of $50,000 and bearing interest at 18 per cent per annum the court found the note had been prepared by a third party who was given no information concerning the rate of interest and that the plaintiff had not sought recovery of any interest on the loan.
The facts in our matter are somewhat similar in that our plaintiff played no part whatsoever in the preparation of the note. In defendant's words "I wanted to protect Nancy if I died." The defendant retained possession of the note after its execution and while the parties lived together plaintiff made no effort to enforce its terms, feeling, as she testified. that defendant "would make payments if he could." While plaintiff's counsel in his proposed orders has suggested that plaintiff recover the full amount of the note and accrued interest as well, this court finds, on the evidence, that plaintiff lacked the intent to evade the provisions of Sec. 37-4 C.G.S., that the forfeiture provisions are not herein applicable, and that plaintiff is entitled to recover the principal balance due on said note, i.e. $48,000.
This court further finds that no agreement existed between the parties whereby defendant would receive note repayment credit for various purchases made by him on plaintiff's behalf during their marriage.
Lastly, since this note was executed more than two years before their marriage it has not been and will not be considered part of the distributable marital estate of the parties.
Fault
A review of the court's notes on this factor highlights the divergent views of the parties in this issue.
Plaintiff
Plaintiff testified that on at least ten occasions defendant was physically abusive to her. Some of these incidents were witnessed by either her father or her son, both of whom also spoke on her behalf. In July, 1993 defendant punched and kicked her and tried to slam her hand in a door. Frequently when such CT Page 13515 incidents of abuse occurred, plaintiff and her two children would leave the family home and live with her father until tempers cooled. Toward the end of their stay together, matters worsened. The parties were ordered by the court to occupy different parts of the family home. Defendant left all the lights on constantly, his radio blared at all times, there was no hot water in the house and he kicked the family dog. Following their separation plaintiff received abuse counseling from a Dr. Stillwell for two years.
Defendant
Defendant testified that he never hit or touched the plaintiff but that once, in the summer of 1995 plaintiff assaulted him, leaving numerous bruises on him. He described plaintiff's son's testimony concerning his physical abuse of her as "a complete fabrication." Plaintiff denied defendant s allegation that she was emotionally involved with other men shortly after the parties separated. and that she used alcohol to excess. Defendant claimed that he had a huge credit card debt which resulted from his effort to support plaintiff's lavish life style.
Plaintiff's Car Accident
More than passing mention should be made of an auto accident in which plaintiff was involved in April, 1992, and certain events that transpired thereafter. The law firm of Riscassi and Davis represented her and initiated suit on her behalf as well as that of the defendant for loss of consortium. Following the separation of the parties defendant called and wrote opposing counsel in their lawsuit advising him in substance that plaintiff's claim was fraudulent. Plaintiff's counsel in this tort claim testified that the matter was ultimately settled for $25,000 and that because of defendant s actions its value had been diminished by at least fifty per cent.
When questioned on this subject, defendant stated that "I wanted the truth revealed. I didn't think it would help her case."
After reviewing all of the evidence on this factor, this court concludes that responsibility for the breakdown of the marriage rests with defendant. CT Page 13516
The Contributions of the Parties to the Marital Estate
Plaintiff
In 1987-1988, two years before her marriage and while engaged to defendant. plaintiff sold her home and various items of personal property for about $97,000. She thereafter loaned defendant $49,000 as recounted elsewhere herein, and in July, 1990, gave defendant an additional $9500. The balance of the funds were expended in the purchase of a home for her and her two children in Bristol, Connecticut. Following her marriage she sold the Miller Road property, using the net proceeds of about $30,000 to purchase the jointly owned family home on Broadview Street, Bristol, Connecticut in February, 1991. Still later, in May, 1992, she withdrew $1,800 from her children's bank accounts and gave it to defendant.
Plaintiff's father also made substantial contributions to the marital estate. Over the years he contributed $10,000 to finish off various rooms in the family residence. He gave them an additional $13,000 during the marriage and he paid $39,000 for plaintiff's dental education.
Defendant in turn testified that he paid all of plaintiff s undergraduate tuition as well as $10,000 for the first year dental training. Expanding in this subject defendant stated that he supported plaintiff and her two children throughout the marriage, that he gave the children virtually everything they wanted including a good education at St. Joseph Catholic School, that he paid for the daughter's horseback, piano and ballet lessons as well as clothing for both children and that "for every nickel I earned I spent $10 — it was spend, spend, spend for plaintiff and her two children." He stated that he paid the down payment of $30,000 for the Broadview property and that "I easily spent $50,000 on plaintiff's children."
On the credible evidence this court concludes that plaintiff's contributions to the marital estate exceeded those of defendant.
Other Factors
The vocational skills and employability of the parties are about equal, as are the opportunities of each of them for the future acquisition of capital assets and income. CT Page 13517
Both parties appear to be in reasonably good health. They have similar liabilities and similar needs.
Conclusion
Having reviewed and weighed all of the evidence as it pertains to Sec. 46b-81 (c) C.G.S. and having given special consideration to such predominate factors as fault and the relative contributions of the parties to their marital estate, this court concludes that the marital estate of the parties should be divided, with the exception of their dental practices as follows:
 Plaintiff 65% Defendant 35%
Further, the parties shall each keep and retain their present dental practice free of any and all claims thereto by the other party.
IV. The Distribution of the Marital Estate In Accordance With TheFIndings Made in Article (supra)
 The amount of the marital estate after deducting dental practices of the parties $59,705
 Plaintiff's share 65% 38,808 Defendant's share 35% 20,897
 Plaintiff Shall Take and Have
 Household furniture, etc. Webster Bank (2 accounts) 1,200 1995 Jeep Wrangler (son's car 1997 Ford Contour (daughter's car) 1991 Plymouth Van 2,500 Dental Practice Amount due from defendant 35,108 -------- Total $38,808
 Defendant Shall Take and Have
Entire interest in equity in No. 80 $21,911 CT Page 13518 Broadview Street, Bristol. CT Entire interest in equity in No. 417 Highland Street Waterbury. CT $22,053 Entire interest in Pomeraug office (pre-marital) 1969 Chevrolet Corvette 9,000 Corp/A Newton S/B 3,000 Community S/B Life Insurance C.S.V. 41 Dental Practice -------- Sub total $56,005
Less amount due Plaintiff — $35,108
Total due Defendant — $ 20,897
V. Supplemental Orders Relating to the Distribution of theMarital Estate
A. Plaintiff is ordered to convey to defendant by quitclaim deed all of her interest in the family home at No. 80 Broadview Street, Bristol, Connecticut as well as all her interest in property at No. 417 Highland Street, Waterbury, Connecticut. Defendant in turn will hold plaintiff harmless concerning all mortgages and other encumbrances on said property and will further cause plaintiff to be released from any obligations relative to said mortgages within six months from date hereof.
B. Defendant is ordered to give plaintiff his promissary note in the amount of $35,108 bearing interest at the rate of five per cent per annum and being due and payable in the following manner:
 By the payment of $8,000 together with accrued interest one year from date hereof and by the payment of a like sum of $8,000 together with accrued interest annually thereafter until November 30, 2002, at which time all then remaining balances of principal and interest shall be fully due and payable.
 If any payment of principal and interest shall remain unpaid for a period of more than thirty days, then the entire balance of said note shall be fully due and payable at the option of the holder of said note.
CT Page 13519
 The maker of said note reserves the right to anticipate payment of principal or interest at any time without penalty.
Said note shall be secured by a mortgage on both properties described in Article V above While said promissory note is described in Orders Relating to the Distribution of the Marital Estate, it is nevertheless the intention of the court that it be considered and treated as lump sum alimony which shall not be dischargeable in any bankruptcy proceeding which may be initiated by the defendant.
C. Each of the parties shall retain such household furniture and similar items of personal property presently in his or her possession free from any claim on the part of such other party.
D. The parties shall execute all documents necessary to carry out these and any other orders of the court.
VI. Alimony
The court has considered all of the provisions of Sec. 46b-82
C.G.S. as they apply to the evidence. In particular it has noted such predominating factors as the relative contributions of the parties to the marital estate, the variations in their present incomes, and fault for the breakdown of their marriage.
On the evidence it is ordered that defendant pay to plaintiff alimony as follows:
 A. The sum of $500 per week for a period of two years, and B. The sum of $250 per week per an additional two years after which time said alimony shall cease and terminate.
It is the intent of the court in making this order to provide a suitable period of time for plaintiff to establish herself in a dental practice and to repay debts incurred in undertaking such a venture
Article VII Other Orders
A. Defendant shall continue to maintain his existing life insurance policies with plaintiff as irrevocable beneficiary during such time as defendant shall be required to pay alimony to the plaintiff CT Page 13520
B. No award of attorneys fees is made to either party.
c Defendant is ordered to pay plaintiff the sum of $3,000 previously ordered by Judge Dranginis on April 7, 1998 (seeTranscript that date p. 62).
Concerning the additional $3,712 which plaintiff seeks from said April 9, 1998 hearing this court opines, after digesting the sixty three pages of transcripts, that it shares the previous court's reluctance to grant plaintiffs request on this issue.
D. Concerning the $250 per day assessment for 14 days requested by plaintiff in D3 of her most recent proposed orders, there is some question in this court's mind whether defendant gave the requested information to his attorney within the required time period. At any rate plaintiff s request for said $3,500 is denied.
E. Defendant is ordered to pay credit card debts to Peoples Bank in the amount of $1,942 and to MBNA in the amount of $4,285, both in accordance with the previous court order of May 10, 1995. Defendant shall also pay plaintiff s car insurance in the amount of $1,365 in compliance with said court order.
F. Defendant is ordered to pay plaintiff's gas allowance in the amoumt of $2,700. See court order of May 10, 1995.
G. With regard to plaintiff s request that defendant pay her $3,718 to representing one half of an income tax refund in the amount of $7,436, the evidence indicates that the check had been sent to defendant in error and that defendant s father returned the check to the I.R.S. This court accepts defendant's account of the history of the check and his lack of any benefit therefrom. Plaintiff's request that defendant pay her $3,718 on this issue is denied.
By the Court
John D. Brennan Judge Trial Referee